UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| BAYCHAR, INC. and<br>BAYCHAR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 04-144-B-C |
| | ) | |
| THE BURTON CORPORATION,<br>DECKERS OUTDOOR CORPORATION,<br>NEW BALANCE ATHLETIC SHOE,<br>INC., and NORDICA USA CORP., | ) | |
| | ) | |
| Defendants. | ) | |

RECOMMENDED DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ASSERTING PATENT INVALIDITY AND NON-INFRINGEMENT
**REDACTED VERSION**

Defendants The Burton Corporation, Deckers Outdoor Corporation and Nordica USA

Corp.[1] have filed a collection of summary judgment motions against the patent infringement

claims brought by Plaintiffs Baychar, Inc., and Baychar Holdings, LLC.  The defendants jointly

contend that the patent in issue is invalid because it was anticipated by the prior art and was

obvious to a person having ordinary skill in the art.  (Docket Nos. 73, 85.)  They also each

separately contend that the patent holder cannot establish that the defendants' respective articles

infringed the patent.  (Docket Nos. 87, 89, 93.)  I recommend that the Court grant the motion for

summary judgment raising the anticipation defense (Docket No. 73), which renders the

obviousness defense moot.  I also recommend that the Court grant all three of the motions

requesting summary judgment based on non-infringement.

---

[1] The Court dismissed the claims against New Balance Athletic Shoe, Inc., on September 22, 2005, pursuant to Local Rule 41.1(a).  (Order of Dismissal, Docket No. 64.)

**Docket No. 134 (Motion for Oral Argument/Hearing)**

Defendants have filed a motion for oral argument.  This matter has been extensively briefed and the parties' submissions have set forth their respective positions.  I see no need for oral argument at this juncture.  I now deny the motion without prejudice to either party's right to renew the request if objections are filed regarding this recommended decision.

**Background**

Baychar, Inc., and Baychar Holdings, LLC (collectively referred to hereinafter as "Baychar") claim that articles of sports apparel made by the defendants infringe independent claim 8 of United States Patent No. 6,048,810 (the "'810 patent"), which was issued to Baychar[2] on April 11, 2000, and which is now held by Baychar Holdings.  As stated in the complaint, claim 8 of the '810 patent "claimed the right to [a] three-layered composite of moisture vapor transfer material" containing an inner layer of foam treated with phase change materials (PCMs)[3] to have "reversible enhanced thermal properties."  (Docket No. 1 ¶ 10.)  According to record sources, this technology permits clothing to which PCMs are applied to absorb body heat and release it again when the amount of heat being generated by the wearer falls below a certain level.  This is made possible because microencapsulated phase change materials "phase" between solid and liquid at certain temperatures and absorb or release energy in the process.  This technology promises to afford apparel makers with one means of manufacturing clothing that insulates the body against cold weather without having to include layers of bulky insulation such as goose down.  Claim 8 of the '810 patent teaches a means of incorporating PCMs into a three-layer composite liner that can be used in athletic wear such as ski boot- or snowboard boot-liners

---

[2]      The Baychar to whom the patent was issued is an individual inventor, not a corporation or company. Accordingly, the Recommended Decision uses singular female pronouns to refer to "Baychar" although the nominal plaintiffs in this action are the Baychar commercial entities.

[3]      The PCM technology has been patented by another entity that is not a party to this suit.

and other articles of clothing.  According to Baychar, her invention is an advancement over the prior art because it teaches that PCMs are best incorporated into foams rather than fibers and also teaches a means of manufacturing a liner that both insulates and breathes.

## Claim Construction

The language of claim 8 is as follows:

A liner comprising:

an inner moisture transfer material;

a first layer of foam attached to the inner moisture transfer material;

a non-woven top sheet attached to the first layer of foam; and

wherein the first layer of foam is treated to have reversible enhanced thermal properties.

Judge Singal held a Markman hearing on May 13, 2002, in a prior action by Baychar against Frisby Technologies and other defendants and issued on August 1, 2002, a Patent Claim Construction Order that construed certain terminology used to describe claim 8.  Baychar v. Frisby Technologies, 230 F. Supp. 2d 75 (D. Me. 2002).  In particular, Judge Singal found that the parties to that litigation agreed that, in order to come within the scope of claim 8, a liner must possess certain "moisture transfer qualities" and be "breathable."  Id. at 78.  The moisture transfer limitation is expressly set forth in claim 8 and applies to the inner layer of the described liner.  The term "breathable" is not expressly set forth in claim 8 but is found in the patent specification.  Judge Singal found as follows:

The '810 patent does not define "breathable" or "moisture transfer."  However, the specification employs the term "breathable" in the context of permeability to moisture vapor.  "An object of the present invention," the specification reads, "is to provide . . . a more breathable liner . . . .  This object . . . is realized by providing a lining system having lining materials which act as a moisture transferring system.  Moisture vapors are transferred through the liner from one side to the other side."  ('810 Patent, col. 1, lines 37-47.)  "Breathable" is also used

3

> in contradistinction to "waterproof."  For instance, the patent refers to "a
> waterproof/breathable membrane," which it defines as a membrane permeable to
> moisture vapor in one direction, but impervious to moisture or moisture vapor in
> the other.  (Id. at col. 5, lines 52-62; see also col. 4, lines 59-61; col. 8, lines 43-
> 49.  Thus, the Court defines "breathable" as "permeable to water vapor."

Id. at 78-79 & n.1 (available in the record at Docket No. 88, Ex. 3.)  In effect, the Court has

concluded that breathability, or permeability to water vapor, although not expressly stated as a

limitation in claim 8, "give[s] meaning to the claim and properly define[s] the invention."

Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 896 (Fed. Cir.), cert. denied, 469

U.S. 857 (1984)).  As for the moisture transfer limitation, Judge Singal construed it as an ability

to "conduct[] moisture via any one of a number of water-transferring processes, including but not

limited to wicking, absorbing, adsorbing, siphoning, capillary action and the like."  Id. at 79.

Unlike the breathable limitation, the moisture transfer limitation need not exist in every layer of

the liner, but must exist in the inner layer of the claim 8 composite (the layer nearest the wearer).

Id. n.1.  Implicit in this construction is a finding that a layer does not automatically qualify as a

moisture transfer layer solely by virtue of being permeable to moisture vapor.  I understand the

distinction to be that the inner layer must conduct moisture away from the wearer's foot and into

the foam layer to prevent or forestall the collection of moisture on the foot, but the foam layer

and top sheet layer must simply be permeable to moisture vapor.  There is no need for moisture

or moisture vapor to move beyond the foam layer of a liner in order for that liner to meet the

breathable limitation of claim 8.[4]

    Another important construction, for present purposes, is that placed upon the "non-

woven" quality of the top sheet specified in claim 8.  According to Judge Singal, Baychar did not

---

[4]    Depending on the composition of shoe or clothing layers beyond the liner's top sheet, it may not be possible
for moisture to escape the liner system taught by claim 8 even if the top sheet is breathable.  Even if all shoe layers
were permeable to moisture vapor, that also would not mean that the liner taught by claim 8 could not fail to
effectively manage moisture during intense or prolonged activity.

appear to raise any dispute as to the fact that the non-woven qualifier refers to "a sheet, web or batt of fibers or filaments of wood pulp, rayon, cotton, polypropylene, polyester, lycra or a combination thereof that are bonded to each other by any of several means" and specifically excludes top sheets comprised of "[p]apers, wovens, knits and felts." <u>Frisby Techs.</u>, 230 F. Supp. at 82.

In the instant action the parties submitted claim construction briefs requesting certain refinements on Judge Singal's earlier claim construction. I indicated that the defendants in this action and the defendant in the parallel action against Salomon should file a consolidated brief on claim construction issues and that it would be addressed on the Salomon docket. (<u>See</u> Docket No. 57.) The recommended decision on claim construction issues raised in this matter is to be found on the Salomon docket (04-CV-144-B-C) at entry number 31. That recommended decision addressed, among other things not material to the pending motions, a request by Baychar to construe the "non-woven top sheet" limitation to include scrims having the characteristics of non-wovens. I recommended that the Court construe claim 8's top sheet limitation to include the use of a scrim as a top sheet, provided that the scrim otherwise meets the non-woven definition and is breathable. (Salomon Docket No. 31 at 5-6.) The Court adopted that recommendation following de novo review and in the absence of any written objection by the parties. (Salomon Docket No. 47.)

### Discussion

The pending motions are of two kinds. The motions raising the anticipation and obviousness defenses challenge the validity of claim 8 of the '810 patent. With respect to these motions the movants face a considerable burden. Patents are presumptively valid, 35 U.S.C. § 282, and a party asserting invalidity must demonstrate it with clear and convincing evidence.

Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001), cert. denied, 534 U.S.

1172 (2002) (citing Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed.

Cir. 1984)).  The motions asserting non-infringement however, place the burden of proof on

Baychar, as patentee, to demonstrate that the allegedly infringing (accused) articles are

encompassed by claim 8 of the '810 patent.  Exigent Tech. v. Atrana Solutions, Inc., 442 F.3d

1301, 1307-1308 (Fed. Cir. 2006).  I begin my discussion with an evaluation of the defendants'

presentation on their defenses and then evaluate Baychar's presentation to determine which of the

defendants' articles she accuses and whether the evidence she adduces is sufficient to generate a

trial-worthy issue of infringement.

**A.      Patent Invalidity Defenses**

According to the defendants, claim 8 of the '810 patent is anticipated by two[5] instances of

prior art and is therefore invalid.  (Docket No. 73.)  The defendants' anticipation arguments are

premised on subsections (b) and (e) of section 102 of the Patent Act.  Subsection (b) undermines

a patentee's right to a patent when, among other things, "the invention was . . . on sale in this

country, more than one year prior to the date of the application for patent in the United States."

35 U.S.C. § 102 (b).  Subsection (e) undermines a patent when, among other things, the

invention was described in a different patent granted in the United States prior to the date of the

patentee's invention.  Id. § 102 (e).

> Anticipation is a question of fact . . . .  A rejection for anticipation under section
> 102 requires that each and every limitation of the claimed invention be disclosed
> in a single prior art reference.  In addition, the reference must be enabling and
> describe the applicant's claimed invention sufficiently to have placed it in
> possession of a person of ordinary skill in the field of the invention.

In re Paulsen, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994) (citation omitted).

---

[5]      The defendants' anticipation motion asserts three instances of prior art, but one instance, a so-called
Outlast/Eclipse product, is not pressed in their reply memorandum.

### 1.   The § 102(b) "on sale" bar

According to the defendants, the liner taught in claim 8 of the '810 patent was already in use and on sale in the United States more than one year prior to the date of Baychar's '810 patent application.  All of the limitations of the claim 8 liner, they say, were embodied in an Outlast[6] Alpine TRF3 liner product.  (Defs.' Anticipation Mot. Summ. J. at 6-7, Docket No. 73.)  In support of this argument the defendants put forth in their statement of material facts an anticipation claim chart in which it is asserted that the Outlast product contains every element of the claim 8 liner.  (Anticipation Statement of Mat. Facts (Anticipation SMF) ¶¶ 31-36, Docket No. 74.)  They also assert that the relevant '810 patent application date is August 13, 1997, and that the Outlast product was on sale as early as March 15, 1996.  (Id. ¶¶ 10, 37-39.)

> In order to invalidate a patent under the on-sale bar of 35 U.S.C. § 102(b), an accused infringer must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the patent and that the product sold or offered for sale anticipated the claimed invention or rendered it obvious.

3M v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002).  Importantly, "[o]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)."  Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001).

In opposition to the anticipation motion, Baychar emphasizes the clear and convincing burden of proof and argues that the appropriate summary judgment inferences, which favor her, call for the denial of this aspect of the motion.  Baychar contends that the dates asserted by the defendants are subject to dispute and that the anticipatory quality of the asserted prior art is not corroborated.  (Opp'n to Anticipation Mot. at 3, 5-6, Docket No. 55.)

---

[6]      Outlast Technologies is a materials manufacturer that was a party to the prior Baychar litigation.

The '810 patent application was filed on August 13, 1997.  (Anticipation SMF ¶¶ 10-11.)
For purposes of the "on sale" bar, the operative date is August 13, 1996, one year prior to the
application date.  According to the declaration of Monte C. Magill, a current employee of Outlast
Technologies, the following three exhibits to his declaration demonstrate a sale of a composite
fabric embodying all of the claim 8 limitations prior to August 13, 1996.  (Id. ¶ 30.)

Exhibit J—asserted to be a true and correct copy of a March 15, 1996, invoice showing a
sale of prototype "Black Microdenier w/ PBNII."  According to Magill, Black Microdenier w/
PBNII was the former description of, and is the identical product as, what is now marketed by
Outlast as its "Alpine TRF3 fabric."  (Magill Decl. ¶ 16 & Ex. J.)  Exhibit J does not describe the
black microdenier product as a composite, although it does describe another product in that
fashion.  (Anticipation Opposing SMF (Anticipation OSMF) ¶ 30, Docket No. 92, citing Ex. J.)

Exhibit K—asserted to be a true and correct copy of an August 1, 1996, letter from Jane
Cook, Outlast's former operations manager, to Steve McPhail of Shawmut Mills, attaching a
product list showing prices, marketing names and descriptions of Outlast products, including the
Outlast Alpine TRF3 product.  The description of the Alpine TRF3 product states:  "OUTLAST
fabric composite with nonwoven scrim and black microdenier / hydrophilic tricot.  (Id. ¶ 17 &
Ex. K.)  Exhibit K does not describe the number of layers in Alpine TRF 3.  Nor does it indicate
the presence of foam in the product.

Exhibit L—asserted to be a true and correct copy of a series of specification sheets for
Outlast products, including Alpine TRF3, that "relate to some of the products set out in Exhibit
K.  The specification for Alpine TRF3 states that it is among Outlast's temperature regulating
fabrics and that it has "unique insulative properties" that "work interactively with the wearer to
maintain a comfortable temperature barrier against cold weather."  It further describes the

product as a "composite fabric [] suitable as a liner material with the tricot fabric side facing the wearer."  The "composite makeup" specification identifies the following layers:

      -Microdenier Tricot (60% polyester/40% Hydrophil nylon)
      -OUTLAST coating
      -.050" foam
      -Nonwoven polyester scrim

The specification further relates that the composite fabric's "Moisture Vapor Transmission Rate" is 609.4 grams/m$^2$/24 hrs, and that its "Air Permeability" is 5.02 cfm/sq. ft.  Exhibit L is undated.

Magill asserts in his declaration that the inner layer of tricot fabric is breathable and permeable to water vapor and that it also conducts moisture by wicking it away from the surface. He asserts that the second layer is the foam layer and that it is directly coated with Outlast PCMs.  He describes this layer as breathable, permeable to water vapor and physically attached to the tricot layer by lamination.  He describes the third layer scrim as a non-woven layer that is permeable to water vapor and laminated to the foam layer.  The entire composite, according to Magill, is permeable to water vapor.  (Anticipation SMF ¶¶ 30-35; Magill Decl. ¶ 18 & Ex. L.) Thus, according to Magill, Alpine TRF3 possesses each of the limitations of claim 8 of the '810 patent.  (Anticipation SMF ¶ 36.)

I conclude that Mr. Magill's assertion that the black microdenier product identified in exhibit J was identical to Alpine TRF3 is not sufficient evidence to compel a finding that it was, in fact, the same product.  Thus, for purposes of summary judgment, the record (exhibit J) does not contain clear and convincing evidence that a definite sale of the allegedly anticipatory Alpine TRF3 occurred prior to the pivotal date.  Nor, in the absence of exhibit J, does exhibit K compel a finding that the allegedly anticipatory Alpine TRF3 product was the subject of a timely

"commercial offer for sale, one which the other party could make into a binding contract by simple acceptance."  Group One, Ltd., 254 F.3d at 1048.[7]

> ## 2.      *§ 102(e) anticipation by an earlier filed United States patent application*

According to the defendants, a patent application filed on May 21, 1996, by one Hermann (the Hermann patent), teaches prior art that anticipated claim 8 of the '810 patent.  (Anticipation Mot. Summ. J. at 7-8.)  Baychar counters that the Hermann patent does not clearly and convincingly anticipate claim 8 and that, in any event, the defendants have not introduced any evidence concerning Baychar's date of invention for the liner taught in claim 8.  (Anticipation Opp'n Mem. at 7.)  She further asserts that she "invented, reduced to practice, examined, and tested [the] invention described in claim 8, and confirmed that it had the properties described . . . before January 1, 1996."  (Id.)

Title 35 U.S.C. § 102(e) provides in pertinent part:

> A person shall be entitled to a patent unless--
> . . . .
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent . . . .

It is undisputed that the Hermann patent was filed on May 21, 1996, more than a year prior to the application date of the '810 patent.  (Anticipation SMF ¶ 40.)  However, Baychar attests that she invented the claim 8 liner of the '810 patent before May 21, 1996.  (Anticipation OSMF ¶ 41, citing Aff. of Baychar in Opp'n to Summ. J. ¶ 20, Docket No. 91, Elec. Attach. 1.)  Ordinarily, such fact testimony by a summary judgment non-movant would be sufficient to generate a

---

[7]      In their reply statement of material facts, the defendants seek to expand the summary judgment record considerably by introducing several new declarations and other evidence not initially relied upon in support of their original statement of material facts.  (Docket No. 108.)  This approach to summary judgment practice does not comport with local practice and, in any event, the expanded record would still require the Court to rely on the conclusory testimony of interested witnesses in order to find that exhibits J and K concern the same article, a proposition that is not clearly and convincingly established with that kind of evidence.

genuine issue of material fact because the non-movant's fact testimony is to be taken as true for purposes of summary judgment.  However, the defendants assert that an inventor must present some manner of corroborating evidence to support his or her assertion of invention date. (Anticipation Reply Mem. at 6, Docket No. 107.)  That appears to be so.  When priority is contested, an inventor cannot establish an invention date, or reduction to practice date, exclusively by means of his or her own statements and writings.  Cooper v. Goldfarb, 154 F.3d 1321, 1330 (Fed. Cir. 1998).  Thus, even though it is not Baychar's burden to prove by clear and convincing evidence that the Hermann patent application date does not precede the date on which she invented the liner described in claim 8, the corroboration rule has been applied to prevent an inventor from relying on self-serving testimony alone to maintain an existing patent. Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1170-71 (Fed. Cir. 2006) (observing that "the corroboration requirement provides an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past through their testimony" and stating that, despite the deference owed to the factfinder, the Court of Appeals for the Federal Circuit "refus[es] to base priority determinations on a court's uncorroborated assessments of a testifying inventor's credibility"); see also Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350 (Fed. Cir. 2001) (describing "the standards by which to judge whether or not an inventor's testimony has been sufficiently corroborated").  Because Baychar's local rule statement of material facts does not recite any corroborating evidence, I assume that none is available and find, for purposes of summary judgment, that claim 8 of the '810 patent was reduced to practice as of its constructive reduction to practice date: the date of the patent application.  Because the application date of the Hermann patent predates the application date of

the '810 patent, I next consider whether the Hermann patent teaches a liner that embodies all of the limitations of the liner taught by claim 8 of the '810 patent.

Baychar argues that the Hermann patent does not describe the same invention as the liner taught by claim 8 of her '810 patent because it describes a process whereby the inner foam layer "absorbs, adsorbs, gels and stores body fluids and other moisture" rather than a process whereby the moisture is transferred beyond the foam layer and the final layer of the liner, which characteristic she describes as "breathability."  (Opp'n Mem. at 7; Anticipation OSMF ¶ 42.) Anticipation is a question of fact.  In re Paulsen, 30 F.3d 1475, 1478 (Fed. Cir. 1994).

> A rejection for anticipation under section 102 requires that each and every limitation of the claimed invention be disclosed in a single prior art reference.  In addition, the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention.

Id. at 1478-79.  In my prior recommended decision on claim construction issues, I described the claim 8 liner as follows:

> The '810 patent relates a system of boot liners that are designed to transfer moisture away from the wearer's foot, through a series of breathable layers, including an "active" moisture transferring layer, to the outside of the liners.

(Oct. 6, 2005, Rec. Dec. at 2, Docket No. 31.)  My use of the term breathable was a function of Judge Singal's prior claim construction of the same claim 8 in Baychar v. Frisby Technologies, 230 F. Supp. 2d 75 (D. Me. 2002).  The breathable concept is not expressly stated in the body of independent claim 8 but is found in the specification of the patent.  The following excerpt consists of Judge Singal's prior construction of the breathable concept, which he made in the context of construing the term "liner":

> The '810 patent does not define "breathable" or "moisture transfer."  However, the specification employs the term "breathable" in the context of permeability to moisture vapor.  "An object of the present invention," the specification reads, "is to provide . . . a more breathable liner . . . .  This object . . . is realized by

> providing a lining system having lining materials which act as a moisture
> transferring system.  Moisture vapors are transferred through the liner from one
> side to the other side."  ('810 Patent, col. 1, lines 37-47.)  "Breathable" is also used
> in contradistinction to "waterproof."  For instance, the patent refers to "a
> waterproof/breathable membrane," which it defines as a membrane permeable to
> moisture vapor in one direction, but impervious to moisture or moisture vapor in
> the other.  (Id. at col. 5, lines 52-62; see also col. 4, lines 59-61; col. 8, lines 43-
> 49.)  Thus, the Court defines "breathable" as "permeable to water vapor."

Id. at 78 (available in the record at Docket No. 74, Ex. 3.)  In effect, the Court has concluded that

breathability, or permeability to water vapor, although not expressly stated as a limitation in

claim 8, "give[s] meaning to the claim and properly define[s] the invention."  Perkin-Elmer Corp.

v. Computervision Corp., 732 F.2d 888, 896 (Fed. Cir.), cert. denied, 469 U.S. 857 (1984)).

Thus, in order to anticipate claim 8, the Hermann invention must disclose and enable a

breathable three-layer composite liner, i.e., one that is permeable to water vapor.  For purposes of

the instant motion for summary judgment based on anticipation, the breathable limitation is the

only limitation that Baychar asserts as distinguishing her invention from Hermann's.  She

maintains that the Hermann invention is not breathable because it describes a process in which

the inner layer of foam adsorbs or absorbs moisture for storage rather than transfer.

(Anticipation OSMF ¶ 42, citing Hermann Patent, col. 2, ll. 11-27; col. 6, ll. 1-6; col. 16, ll. 11-

22.)  At his deposition, Baychar's expert, G.A.M. Butterworth, twice testified that this

description of "storage" is the only way in which the Baychar patent differs from the Hermann

patent.  (Butterworth Dep. at 199 l. 22 – 200 l. 5 & 204, ll. 9-16, Ex. 10; Anticipation SMF ¶ 42

citing Hermann Patent Anticipation Claim Chart, Ex. 11.)

   The Hermann patent reflects an invention directed principally toward creating a moisture-

managing composite material for use in shoe or boot insoles and in athletic apparel.  (Hermann

col. 1, ll. 5-12.)  The invention discloses a system of components for "absorbing, adsorbing,

transferring, gelling or storing and dissipating body fluids and moisture."  (Id., col. 1, ll. 9-11.)

For purposes of the anticipation question, the material dispute is not whether the Hermann invention stores moisture in its foam layer, but whether it is breathable.  The inventions described in both patents involve a process of moisture-transfer to an inner layer of foam.  Judge Singal has already found that the moisture transfer process in the Baychar invention is caused by, among other things, a process of adsorbing or absorbing the fluid into the foam layer.  Frisby Techs., 230 F. Supp. 2d at 79.  Additionally, Judge Singal rejected any construction of claim 8 that would ascribe qualities of "active" moisture transference through or beyond the foam layer.  Id. at 79 & n.1.  The breathable limitation requires only that all layers be permeable to water vapor.  Hermann's use of the concept of "storage and dissipation" is, thus, not inconsistent with the breathable limitation, making Baychar's and Mr. Butterworth's contrary assertions a red herring.  On the material question of permeability to water vapor, there appears to be no real dispute.  Hermann in fact teaches an embodiment wherein the foam layer and the outer layer are permeable to water vapor.  With regard to the foam layer, Mr. Butterworth testified at his deposition that Hermann describes the use of hydrophilic foams in his invention that are permeable to water vapor.  (Anticipation SMF ¶¶ 42-43; Butterworth Dep. at 216, Docket No. 38, Ex. 10.)  And with regard to the outer layer, Mr. Butterworth acknowledged that there is one embodiment that utilizes a non-woven material bonded to the foam layer that is the same as the non-woven top sheet described in claim 8.  (Butterworth Dep. at 202-203.)  Finally, Mr. Butterworth twice testified that the process of storage and dissipation described by Hermann is the only way in which the Hermann invention materially differs from the invention taught in claim 8 of the '810 patent.  Unfortunately for Baychar, her claim does not assert as a limitation the absence of any temporary or transitory moisture storage in the foam layer (assuming, for the sake of argument, that such a phenomenon is even possible).  Thus, even though Hermann

14

describes the foam layer in the Hermann invention as performing a moisture-storing function,

moisture-storage is not inconsistent with the breathable limitation as long as the foam layer is

permeable to water vapor.[8]  "The anticipation analysis asks solely whether the prior art reference

discloses and enables the claimed invention, and not how the prior art characterizes that

disclosure." Hewlett-Packard Co. v. Mustek Sys., 340 F.3d 1314, 1324 n.6 (Fed. Cir. 2003); see

also Celeritas Techs. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998) ("It is well

settled that a claim is anticipated if each and every limitation is found either expressly or

inherently in a single prior art reference.  . . . .  [T]he question whether a reference 'teaches away'

from the invention is inapplicable to an anticipation analysis."); Perricone v. Medicis Pharm.

Corp., 432 F.3d 1368, 1376 (Fed. Cir. 2005) (affirming partial entry of summary judgment based

on finding that prior patent anticipated various claims within plaintiff's patents and rejecting "the

notion that one of [many possible combinations] cannot anticipate because it appears without

special emphasis in a longer list"); SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331,

1343 (Fed. Cir.  2005) ("[A] prior art reference may anticipate without disclosing a feature of the

claimed invention if that missing characteristic is necessarily present, or inherent, in the single

anticipating reference.") (quoting Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377

(Fed. Cir. 2003) (emphasizing that a limitation or property of an invention may be inherently

anticipated even though one having only ordinary skill in the art would not recognize the

inherent property in the anticipatory reference)).  Because Baychar's only dispute with respect to

whether the Hermann patent discloses each and every limitation of the claim 8 invention is

limited to the immaterial issue of "absorbing" and "storage," she fails to generate a genuine issue

---

[8]      In Baychar's opposition to Nordica USA's non-infringement motion, she argues that a ski boot liner used by
Nordica infringes claim 8 of the '810 patent despite its inability to disperse moisture beyond its outermost plastic
layer.  She asserts that the ultimate capture of moisture by a liner is irrelevant because, even though excessive sweat
does not evaporate, "the foot is at least partially dried by the composite."  (Docket No. 117 ¶ 18.)

of material fact to overcome the defendants' anticipation motion and effectively admits that the defendants' anticipation chart is correct.  In conclusion, although Baychar teaches in claim 8 a composite material having a breathable limitation whereas Hermann does not teach in terms of "breathability," Hermann nevertheless discloses a composite material that, in one three-layer embodiment, contains all of the limitations of claim 8.[9]  In the absence of a genuine dispute as to whether the Hermann invention anticipates claim 8 of the '810 patent, and in the absence of evidence tending to corroborate Baychar's assertion of an invention date preceding the Hermann patent, the defendants are entitled to summary judgment as a matter of law that claim 8 of the '810 patent is invalid by dint of anticipation.

The defendants additionally contend that claim 8 of the '810 patent is invalid because the breathable liner disclosed therein was obvious to one having ordinary skill in the art more than one year prior to the date of the '810 patent application. (Obviousness Mot. Summ. J., Docket No. 85.)  Because claim 8 of the '810 patent was anticipated by the Hermann patent, the dispute over obviousness is rendered moot.  As a matter of law, an invention that is anticipated is obvious.  In <u>Pro-Mold</u> the Court of Appeals for the Federal Circuit observed:  "If one prior art reference describes the claimed invention, it is worse than obvious in terms of patentability; it lacks novelty."  <u>Pro-Mold</u>, 75 F.3d at 1753.  My finding that the Hermann patent anticipates claim 8 of the '810 patent necessarily impinges upon any obviousness inquiry.  I will not endeavor to address obviousness as though the Hermann patent did not anticipate claim 8.

---

[9]      Baychar's opposing statement 42 appears to assert that the non-breathable nature of the Hermann invention tends to be established by the fact that Hermann describes an outer layer meant to provide enhanced stiffness or thermoformability into three-dimensional shapes.  However, Baychar nowhere articulates in her opposing statement of material fact or in her statement of additional fact (which does not comply with Local Rule 56 and sets forth no proper factual statements) why or how stiffness or thermoformability would prevent the Hermann invention from being permeable to moisture vapor.  As a result, I have not drawn any inference in favor of Baychar from Hermann's reference to stiffness and thermoformability, particularly where Mr. Butterworth has allowed that Hermann includes in his invention both a breathable foam layer and a breathable top sheet layer.

B.    **Infringement**

The existence of an infringing product is something that Baychar must establish on the record.  Exigent Tech. v. Atrana Solutions, Inc., 442 F.3d 1301, 1307-1308 (Fed. Cir. 2006).  "The determination of infringement requires a two-step analysis: (1) claim construction to determine the scope and meaning of the claims asserted to be infringed, and then (2) a determination of whether the properly construed claims encompass the accused device."  Zellinski v. Brunswick Corp., 185 F.3d 1311, 1315 (Fed. Cir. 1999) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)).  "Claim construction is a matter of law."  Id.  "Whether a claim encompasses an accused device, either literally or under the doctrine of equivalents, is a question of fact."  Id.  "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005).

I address each defendant's accused articles and summary judgment arguments in turn.  The facts for purposes of summary judgment are drawn from the parties' Local Rule 56 statements of material fact in accordance with this District's summary judgment practice.  See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the procedure); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining the "the spirit and purpose" of Local Rule 56).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, all evidentiary disputes appropriately generated by the parties' statements are resolved, for purposes of summary judgment only, in favor of the non-movant.  Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).

### 1.     Burton's Articles

Burton purchased certain fabrics and foams that contained phase change materials (PCMs) from Outlast Technologies for use in snowboard boot liners and footbeds sold by Burton.  (Docket No. 88 ¶¶ 10, 14; Docket No. 121 ¶¶ 10, 14.)  Several snowboard boots contain PCMs only in the footbed (id. ¶ 11) and the footbed used in these boots contained a closed-cell foam that is not permeable to water vapor (id. ¶ 12).  Thus, none of these products infringe claim 8 of the '810 patent because they cannot meet the "breathable" limitation placed on that claim. Other Burton boots used PCMs in both the footbed and the liner.  (Id. ¶ 13.)  Baychar points to product specification sheets for three articles, the 2003 Ion Socket HD boot, the 2004 SL (Super Light) and the 2006 Supreme, as having infringing liner systems.[10]  (Id. ¶ 14.)  The specification sheets indicate the following composition of the accused articles' liners:

### REDACTED

(Id. ¶ 14, citing product specification exhibits filed under seal: Ex. 1 at 0005; Ex. 2 at 0097; Ex. 3 at 0336.)  The Outlast foams used in these articles are PCM-coated foams.  (Id. ¶¶ 14-16.) According to Baychar, the inner *REDACTED* layers actively transfer moisture and the Outlast and *REDACTED* foam layers and the *REDACTED* topsheets all permit moisture vapor to pass. (Id. ¶ 14, citing Baychar's Second Aff. ¶ 8, Docket No. 113.)  Baychar also asserts that *REDACTED* is a very thin breathable scrim that can function as a non-woven top sheet. (Baychar's Second Aff. ¶ 8.)  These assertions are based on Baychar's personal knowledge and familiarity with these materials, obtained through her work in the industry.  (Id.)  Burton appears to dispute these characterizations and relies on comparable testimony by one skilled in the industry.  (Docket No. 88, ¶¶ 18-19, citing Gaisser Decl. ¶¶ 4-5, Ex. 7.)  Baychar has not obtained samples of these articles for her expert, G.A.M. Butterworth, to analyze.  For purposes

---

[10]     Baychar's unredacted opposing statement of material facts (Docket No. 121) was filed under seal.

of summary judgment, she relies exclusively on her own testimony to generate a genuine issue of material fact.  (Docket No. 88 ¶ 21-22; Docket No. 121 ¶ 21-22.)

In its motion for summary judgment Burton argues that the foregoing evidence is not sufficient to permit a finding that the accused liners are breathable through all layers or have a non-woven top sheet.  (Docket No. 87 at 6-7.)  Burton says that Baychar must present testing or analysis.  (Id. at 6.)  It asserts that Mr. Butterworth concluded Burton's articles did not infringe because they did not have a non-woven top sheet.  (Id. at 8.)  The record reflects that Mr. Butterworth looked at some Burton articles other than the ones identified above and found them not to infringe on that basis.  However, no attempt has been made by Burton to demonstrate that the top sheet used in those articles was the ***REDACTED*** top sheet used in the Ion Socket HD, the Super Light and the Supreme articles discussed above.  (See Butterworth Dep. at 42, Docket No. 88, Ex. 10.)

In its reply memorandum Burton argues that the specification sheets cited by Baychar in support of her claims are insufficient evidence in themselves because a jury could not conclude from reviewing them that the layers of the accused liners are all breathable, that the inner layer is a moisture-transfer material or that the ***REDACTED*** top sheet is a non-woven.  (Docket No. 130 at 3.)  As for Baychar's testimony, Burton argues that it is entirely conclusory and highlights the tentative nature of Baychar's characterization of the ***REDACTED*** top sheet as "a scrim that can function as a non-woven top sheet."  (Id., emphasis original.)  In Burton's words, Baychar's characterization is not sufficient because she only states that ***REDACTED*** can function as a non-woven, "not that it is a non-woven."  (Id. at 4, emphasis original.)  In a sur-reply memorandum, Baychar asserts that her affidavit testimony is based on her personal knowledge and that Burton has not contradicted her assertion "that ***REDACTED*** is a very thin breathable scrim that can

19

satisfy the non-woven top sheet [limitation]."  (Docket No. 133 at 4.)  She does not, however, refine her testimony to be any more specific about whether **REDACTED** is a non-woven.

I conclude that Baychar has not carried her summary judgment burden with this presentation.  The material question that I cannot answer from this record is whether **REDACTED** is a non-woven fabric.  For purposes of this litigation, the answer to that question obviously depends on whether **REDACTED** meets the definition that the Court has given to the non-woven limitation: whether **REDACTED** is a "sheet, web or batt of fibers or filaments of wood pulp, rayon, cotton, polypropylene, polyester, lycra or a combination thereof that are bonded" rather than woven or knit.  I trust that the parties and their experts all know whether **REDACTED** is a non-woven, but the important concern here is that a lay jury viewing the record that the parties have assembled would be forced to speculate about the matter.  As the party with the burden of proof on the question of infringement, the fact that the jury would be left to speculation does not serve Baychar, although that appears to be her view.  Baychar's assertion that **REDACTED** "can function as" a non-woven top sheet is a conclusory statement that does not supply the needed factual information that **REDACTED** is a bonded fabric comprised of the stated substances.  See Zellinski v. Brunswick Corp., 185 F.3d 1311, 1317 (Fed. Cir. 1999) (indicating that "conclusory expert declarations devoid of facts upon which the conclusions were reached fail to raise a genuine issue of material fact which would preclude summary judgment" and citing Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 876 (Fed. Cir. 1998)).

### 2.    *Deckers's Articles*

Deckers has sold three different winter boots that contain Outlast's PCMs: a Minturn boot; a Belmont boot and a Tipton boot.  (Docket No. 94 ¶¶ 10-11.)  According to Patrick

Devaney, Deckers's Senior Vice President of Global Sourcing, Production and Development, the liners in all three of these articles have PCM coatings on the inner layer and not on the foam layer, the inner layer is a polyester mesh knit that does not transfer moisture and the top sheet is a tricot knit that does not qualify as a non-woven.  (Id. ¶ 12.)  In opposition to this statement, Baychar makes reference to product specification sheets for the Minturn and Tipton articles that, she says, indicate the following liner construction:

> **REDACTED**

(Docket No. 122 ¶ 12, Ex. 1 at 00124 & 00130.)  This denial is sufficient to generate a genuine issue of material fact whether PCM-coated foam was used in the Minturn and Tipton articles, but it does nothing to controvert the assertions that the polyester mesh knit does not transfer moisture and that the tricot knit is not a non-woven top sheet.

In paragraphs 15 and 16 of its statement of material fact Deckers asserts that there is no Deckers product that meets all of the limitations of claim 8 of the '810 patent.  In opposition to this statement, Baychar points to a fourth product that she describes as "a Teva hiking shoe body and tongue."  She asserts that her expert, Mr. Butterworth, examined this article and concluded that it meets all the limitations of claim 8.  (Docket No. 122 ¶¶ 15-16, citing Butterworth Dep. at 68-70,[11] 91-92, Ex. 2; Butterworth Report ¶ 19, Ex. 3.)

Baychar does not cite any product specification sheet for the Teva shoe.  Pages 91-92 of the Butterworth deposition transcript reveal the following testimony:

> Q.      And if you could tell me why in your opinion that product [the Teva shoe] infringes claim 8 of the '810 patent.
>
> A.      Well, I—I would refer you to my—here, again—my report, . . . under paragraph [19] in which I state that the Teva hiking shoe body comprises a warp knit inner moisture transfer layer attached to a first layer of breathable open

---

[11]      Baychar only attaches pages 90-93 to her opposing statement of material facts, which was filed under seal. I have searched the electronic docket in vain for a copy of the transcript that includes pages 68-70.

cell foam attached to an adhesive saturated nonwoven attached to a second layer
of breathable open cell foam impregnated with phase change material in an
adhesive vehicle on one foam surface and then attached to a Tietex type
nonwoven, in turn attached to a black synthetic leather upper.

This testimony does not address the question of whether every layer is breathable, i.e., permeable

to moisture vapor.  Turning to the report, paragraph 19 indicates (see also paragraph 16) that Mr.

Butterworth believes the Teva shoe body and tongue are "technically described by claim 8,"

meaning they have, in his words:

> An inner moisture transfer layer attached to a first layer of open cell
> breathable foam which is impregnated with PCM and attached to a nonwoven.
> Additional layers can be present external to, or between any or all of the
> layers present in the minimum construction specified and still meet the
> requirements of claim 8.

Other than these assertions, Mr. Butterworth describes the composition of the Teva shoe body

and its tongue, as follows:

### TEVA HIKING SHOE BODY

> Comprising:   A warp knit inner moisture transfer layer attached to a first
> layer of breathable open celled foam, attached to an adhesive saturated non-
> woven, attached to a second layer of breathable open celled foam, impregnated
> with PCM in an adhesive vehicle on one foam surface and then attached to a
> TieTex type nonwoven, attached to a black synthetic leather upper.

### TEVA HIKING SHOE TONGUE

> Comprising:   A warp knit inner moisture transfer layer, attached to [a]
> first layer of breathable open celled foam, impregnated with PCM in an adhesive
> vehicle on one foam surface and then attached to a non-woven, attached to a
> second layer of breathable open celled foam and attached to a leather outer.

Again, there is no indication that Mr. Butterworth tested to determine that these "liners" were

breathable through each liner layer.  In particular, paragraph 16 of the report, which lists Mr.

Butterworth's evaluation techniques, says nothing concerning any test of permeability to water

vapor.[12]  Baychar does not cite any testimony of her own that would enable the Court to infer that the breathable limitation was present in every layer of these liners.

Deckers argues in its summary judgment motion that Baychar fails to generate a genuine issue of material fact whether the aforementioned Deckers articles meet every limitation of claim 8 of the '810 patent.  (Deckers's Mot. Summ. J at 1-2, Docket No. 93.)  Deckers observes that Baychar failed to present a claim chart and relies entirely on conclusory statements by herself and her expert.  (Id.; Deckers's Reply Mem. at 4-5, Docket No. 129.)   Baychar argues that her sworn statements and those of Mr. Butterworth are sufficient to generate a ge nuine issue on every limitation, particularly when combined with the available product specifications, but she indicates that with regard to the Teva shoe neither she nor Mr. Butterworth have yet reviewed product specification sheets in her counsel's posse ssion.  (Docket No. 115 at 1-4.)  Baychar discusses the Teva article specifically, but her memorandum does not even allude to the Minturn, Belmont or Tipton articles.

With respect to the Minturn, Belmont and Tipton articles, I recommend that the Court grant summary judgment for lack of evidence of infringement.  It is undisputed that the top sheet used in these articles is a tricot knit and knits are specifically excluded from the Court's construction of the non-woven limitation.  Because this limitation is not met, there is no need to address any other claim 8 limitations with respect to these articles.

With respect to the Teva article, I also recommend that the Court grant summary judgment.  The evidence cited by Baychar fails to address whether every la yer of the accused liners is breathable.  For example, the cited testimony and report by Mr. Butterworth simply

---

[12]     Mr. Butterworth discusses some available tests at pages 46-53 (Docket No. 88, Ex. 10.)  For present purposes the Court's construction of what the breathable limitation means only requires that the layers be permeable to moisture vapor; they need not meet any particular standard.  However, that does not mean that Baychar need not offer actual evidence that all layers are permeable to moisture vapor.

indicates that the shoe has a "TieTex type nonwoven" and that the tongue has "a nonwoven" in the location of the third layer, without speaking to whether these layers are breathable.  This shortcoming in the summary judgment record precludes a finding that a genuine issue of material fact exists on the question of whether every layer of the accused liners is breathable and it also obviates any need to explore the question of whether the cited testimony and report are too conclusory to generate a genuine issue in the first place.  See Zellinski, 185 F.3d at 1317.

### 3.      *Nordica's Articles*

Nordica lists 8 models of ski boots that contain PCM-coated foam layers in their liners. (Docket No. 90 ¶ 15.)  According to Nordica, they all utilize a polyester knit fabric for the inner layer that does not transfer or wick moisture, a layer of closed-cell foam and additional layers of plastic material that are not breathable.  (Id. ¶ 17.)  Baychar points to two articles as infringing: the SmarTech 12W boot liner and the SmarTech boot liner.  According to her expert, Mr. Butterworth, the SmarTech 12W liner is comprised of the following layers:

> An inner moisture transfer material, open cell foam with phase change materials, a knit fabric or scrim, a white foam, a black foam, a porous two-layer plastic film, a non-woven, another foam, another non-woven, and a plastic outer layer.

(Docket No. 117 ¶ 17, citing Butterworth Dep. at 57-58, Ex. 2.)  Mr. Butterworth says the SmarTech liner is comprised of the following layers:

> An inner moisture transfer layer, a black foam with phase change materials, a wool knit backing or scrim, a brown adhesive, white foam, a brown crumb foam, white foam, a non-woven, an adhesive, a white foam, an adhesive, a hard polymer outer layer; each of the layers is breathable except for the hard polymer outer layer.

(Id., citing Butterworth Dep. at 75-77 (discussing layers), 78-81 (discussing breathability or porosity).)[13]

---

[13]      According to Nordica's Chief Executive Officer, Andrew Knittle, the inner layer is a polyester knit that does not wick moisture.  (Docket No. 90 ¶ 17.)

Nordica states that these liners are "sealed systems" due to the plastic outer layer and cannot, in fact, breath or pass moisture through the layers of the liner. (Docket No. 90 ¶¶ 18, 22.) Baychar responds that the presence of the plastic outer layer is immaterial because all limitations of the claim 8 liner are present inside the plastic layer and are "breathable," whether they actually "breathe" or not. (Docket No. 117 ¶¶ 18, 22.)

Nordica states that these liners lack a non-woven top sheet attached to the first layer of foam. (Docket No. 90 ¶ 23.) Baychar denies this and points to the presence of the wool knit backing or scrim. (Docket No. 117 ¶ 23.) However, according to Mr. Butterworth, a person skilled in the art would know that a knit is not a non-woven. (Butterworth Dep. at 56:20-57:3.) In fact, Mr. Butterworth testified that he had concluded other Nordica articles (including Nordica's "Beast boot") did not infringe precisely because they had knits and knits are not non-woven. (Docket No. 90 ¶¶ 25-26; Butterworth Dep. at 55:4-14.) This opinion is consistent with Judge Singal's prior claim construction that the non-woven limitation specifically excludes knits. Baychar says that my supplemental claim construction makes this immaterial because I found that scrims are non-woven. (Docket No. 117 ¶¶ 25-26.) I disagree with this characterization. I found that scrims can be used as top sheets, but that they must still be non-woven.

Nordica states that the inner polyester knit fabric does not actively conduct or transfer moisture, such as by wicking. (Docket No. 90 ¶ 24.) Baychar denies the statement, citing the Butterworth deposition. (Docket No. 117 ¶ 24.) As stated above, Butterworth simply states in his deposition, in conclusory fashion, that the liners have an inner moisture transfer material. (See, e.g., Butterworth Dep. at 57-58.) The Butterworth deposition transcript reflects that, when asked why he concluded that the fabric "actively" conducted moisture, he responded: "The very fact that it is porous would allow it to transfer moisture." (Id. at 62:22-63:2.) When pressed, he

indicated that he had not conducted any tests of the material used by Nordica but, in his professional experience, the knit fabric "would conduct moisture as described in this claim construction." Otherwise, he does not remember if it would wick moisture and knows that it would not absorb moisture. (Id. at 64:10-65:9.) In Mr. Butterworth's view, so long as the inner layer is porous it transfers moisture. (Id. at 69:20-70:7.)

The grounds for entry of summary judgment in Nordica's favor are well revealed by the parties' Local Rule 56 statements of material fact, but in any event, Nordica argues in its summary judgment memorandum that Baychar fails to carry her burden of demonstrating that the accused articles meet every limitation of claim 8. (Docket No. 89 at 6-8.) Baychar's opposition memorandum asserts that every limitation is met by the liners used in the SmarTech and Beast articles. (Docket No. 116 at 2-3.) I recommend that the Court grant Nordica's motion for summary judgment based on non-infringement. It is undisputed that the accused articles do not contain non-woven top sheets because the top sheets are knits, which are specifically excluded from the Court's construction of non-woven and are also understood by those skilled in the art to fall outside the non-woven category. The absence of this limitation calls for the entry of summary judgment as a matter of law and makes unnecessary further discussion of the other claim limitations or the conclusory nature of Baychar's evidence.

## Conclusion

For the reasons set forth herein, I RECOMMEND that the Court:

GRANT the defendants' motion for summary judgment on their anticipation defense (Docket No. 73);

DENY as moot the defendants' motion for summary judgment on their obviousness defense (Docket No. 85);

GRANT the Burton Company's motion for summary judgment of non-infringement (Docket No. 87);

GRANT Deckers Outdoor Corporation's motion for summary judgment of non-infringement (Docket No. 93); and

GRANT Nordica USA Corporation's motion for summary judgment of non-infringement (Docket No. 89).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 28, 2006