UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| BAYCHAR, INC., ET AL., | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CIVIL NO. 04-136-B-H |
| | ) | |
| SALOMON/NORTH AMERICA, INC., | ) | |
| | ) | |
| DEFENDANT | ) | |
| BAYCHAR, INC., ET AL., | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CIVIL NO. 04-144-B-H |
| | ) | |
| THE BURTON CORPORATION, ET AL., | ) | |
| | ) | |
| DEFENDANTS | ) | |

DECISION AND ORDER ON DEFENDANTS' MOTIONS
FOR ATTORNEY FEES AND EXPENSES

These motions seek attorney fees for unsuccessful patent litigation by the patentee. I conclude that some fees should be awarded against the patentee under 35 U.S.C. § 285 for vexatious litigation.

In two separate patent lawsuits, Baychar, Inc. and Baychar Holdings, Inc. (collectively "Baychar"), alleged that twenty-two products sold by Salomon/North America, Inc. ("Salomon") and forty-eight products sold by The Burton Corp. ("Burton"), Deckers Outdoor Corp. ("Deckers"), and Nordica USA Corp. ("Nordica")

(collectively the "Burton Defendants")[1] infringed Baychar's U.S. Patent 6,048,810 (the "'810 Patent"), Claim 8. On the infringement claims and a counterclaim of non-infringement, Salomon obtained summary judgment because of patent invalidity, non-infringement and an implied license. The Burton Defendants received summary judgment because of patent invalidity and non-infringement. On appeal to the Court of Appeals for the Federal Circuit, Salomon won on the implied license and the Burton defendants won on patent invalidity; the Federal Circuit did not address the other issues. As the prevailing parties in their respective cases, Salomon and the Burton Defendants now seek an award of attorney fees under 35 U.S.C. § 285.

In patent infringement litigation, Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Salomon and the Burton Defendants assert that these are exceptional cases because Baychar engaged in various acts of bad faith litigation. I conclude that the <u>Salomon</u> case is "exceptional" under Section 285 and justifies a fee award because Baychar vexatiously pursued a majority of its infringement claims even after Salomon disclosed uncontroverted proof of non-infringement in the course of discovery. But I conclude that the <u>Burton</u> case is not exceptional. Accordingly, the Burton Defendants' motion for attorney fees is **DENIED**. Salomon's motion is **GRANTED IN PART**.[2]

---

[1] New Balance Athletic Shoe, Inc., an original defendant, settled with Baychar. Order of Dismissal, No. 04-144-B-C (Docket Item 64).

[2] In the alternative, Salomon requests an award of fees under the court's inherent power. Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 12-13 (Docket Item 169). Because I award fees to Salomon under the standards of Section 285, I do not rely upon inherent power. The Burton
*(continued on next page)*

**ANALYSIS**

Federal Circuit law governs the Section 285 analysis. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366 (Fed. Cir. 2007). "First, a district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional. . . . Second, if the district court finds the case to be exceptional, it must then determine whether an award of attorney fees is appropriate." Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327-28 (Fed. Cir. 2003) (citations omitted).

*I.   "Exceptional"*

Whether a case is "exceptional" is a factual determination. The party requesting fees must prove that assertion by clear and convincing evidence. Id. at 1327. The Federal Circuit has explained that "exceptional" cases involve (among other things) "litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; [and] a frivolous suit." Id. at 1329 (internal quotation omitted).

Salomon and the Burton Defendants identify four acts by Baychar to support their claims that Baychar engaged in bad-faith, vexatious or frivolous litigation: (i) failing to conduct an adequate pre-filing investigation, (ii) refusing to engage in good faith settlement negotiations, (iii) persisting in litigating some claims after discovery revealed incontrovertible proof of non-infringement, and (iv) filing a frivolous appeal. Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 3-4

---

Defendants do not assert an argument for such an award in their motion for attorney fees, but instead note only in their reply that they seek *expenses* under the court's inherent power. Reply in Support of Mot. for Att'ys' Fees & Expenses, No. 04-144-B-C, at 7 n.2 (Docket Item 230). In any event, the Burton Defendants have not argued that the standards are materially different, and I decline to award fees or expenses to the Burton Defendants under inherent power for the same
*(continued on next page)*

(Docket Item 169); Defs.' Mot. for Att'ys' Fees, No. 04-144-B-C (Docket Item 222). Salomon adds a fifth: Baychar's litigating despite a license agreement that this court ultimately held covered Salomon's products.

I find that only the persistence in litigating after discovery (item (iii)) rises to the level of exceptional conduct for Section 285 purposes. I deal with the other accusations first, in reverse order.

### A. *License Agreement*

The Magistrate Judge noted that "for [Salomon's potentially infringing] products made and sold prior to the effective date [of the license agreement], the law is unclear." Recommended Dec. on Def.'s Mots. for Summ. J, No. 04-136-B-C, at 10 (Docket Item 94). Although Baychar was ultimately unsuccessful on its argument that its license was not retroactive, the Magistrate Judge's characterization makes clear that Baychar's argument was at least colorable. "Bringing an infringement action does not become unreasonable in terms of [Section] 285 if the infringement can reasonably be disputed." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1384 (Fed. Cir. 2005). It is therefore not a basis for Section 285 fees.

### B. *The Appeals*

Salomon and the Burton Defendants have not shown by clear and convincing evidence that Baychar appealed to the Federal Circuit in bad faith. It is true that in the Salomon litigation, the Federal Circuit affirmed this court's ruling on Baychar's infringement claims because Baychar failed to appeal the

---

reasons as under Section 285.

4

implied license issue and, therefore, waived any available objection to judgment on its claims. See Baychar, Inc. v. Salomon N. Am., Inc., 281 F. App'x 998, 999 (Fed. Cir. 2008). But in that appeal, the Federal Circuit also vacated judgment on Salomon's counterclaims in order to preserve the issue of patent invalidity for the Burton litigation. See id. Salomon seems to argue that Baychar's failure to assert the license issue in the Salomon appeal amounts to bad faith. Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 10-11. Baychar, however, properly invoked its right to appeal this court's judgment against it with respect to Salomon's counterclaims; Baychar's failure to assert another argument on appeal is not a reason to find that Baychar appealed in bad faith.

The Burton Defendants argue that because Baychar focused most of its appellate argument in their case on patent validity, Baychar frivolously appealed the adverse judgment that was also based on non-infringement. Defs.' Mot. for Att'ys' Fees, No. 04-144-B-C, at 11-12. But Baychar's failure to fully develop some of its available arguments on appeal does not support a finding of bad faith in the appeal. Validity was an important issue on its own.

The appeals do not support Section 285 fees.

### C. *Settlement Negotiations*

I reject Salomon's and the Burton Defendants' argument that they are entitled to attorney fees because Baychar engaged in bad faith settlement negotiations. Settlement negotiations are voluntary; Baychar was free to refuse

any settlement offers, in preference for litigation.[3]  Tellingly, the defendants cite no authority for their proposition that Section 285 fees may be awarded when a party refuses to settle a lawsuit.

The settlement conduct does not support Section 285 fees.

### D.  Pre-filing Investigation

In Eltech Systems Corp. v. PPG Industries, Inc., 903 F.2d 805 (Fed. Cir. 1990), the Federal Circuit dealt in some detail with whether "the reasonableness of the patentee in assessing infringement [before filing the lawsuit is] a proper consideration" in a Section 285 analysis, and concluded that it is.  Id. at 811; see also Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("When the accused infringer prevails in the underlying action, factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior.").  Thus, Section 285 attorney fees may be awarded for inadequate pre-filing investigation where "the patentee knew or, on reasonable investigation, should have known, [its suit] was baseless."  Haynes Int'l, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed Cir. 1993).  But the Federal Circuit has made clear that whether the patentee "should have known" before filing the lawsuit that there was no infringement is more than a question of negligence.  See Eltech Sys. Corp., 903 F.2d at 810.  What is required is "studied ignorance, . . . substantially more than simple negligence."

---

[3] Salomon also argues that Baychar's litigation in companion cases, coupled with multiple changes in its lawyers in connection with representation in its case, amounts to bad faith tactics.  Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 8-9.  Baychar, however, may pursue colorable claims against multiple potential infringers of the same patent.  Furthermore, Baychar has a right to select counsel of its choice, and it is not "exceptional" for a party to change lawyers in the midst of
*(continued on next page)*

Id. This "gross negligence standard has been defined as requiring willful, wanton, or reckless misconduct, or evidence of utter lack of all care." Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985). The Eltech court explained:

> Where . . . the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence. The alternative, abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law . . . .

Eltech Sys. Corp., 903 F.2d at 811. Thus, "[t]he end inquiry . . . is whether [the patentee] recklessly concluded that [the defendant] infringed." Mach. Corp. of Am., 774 F.2d at 473.

The defendants rely on caselaw discussing Rule 11 to argue that inadequate pre-filing investigation is sufficient to justify sanctions. In some of those cases, the Federal Circuit has said that a patentee must obtain and test allegedly infringing products before filing suit, unless it is impracticable to do so. See, e.g., Intamin, Ltd. v. Magnetar Tech., Corp., 483 F.3d 1328, 1338 (Fed. Cir. 2007) (pre-filing investigation inadequate if "the patentee could have easily obtained a sample of the accused device . . . for a nominal price" yet did not, but an investigation may be adequate if circumstances otherwise "presented the patentee with unreasonable obstacles to any effort to obtain a sample"); Hoffman-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1364 (Fed. Cir. 2000) (pre-filing investigation adequate because "[i]t [was] difficult to imagine what else [the patentee] could have

---

litigation.

done to obtain facts relating to [the defendant]'s alleged infringement"); Judin v. United States, 110 F.3d 780, 784-85 (Fed. Cir. 1997) (admonishing a patentee because "[n]o adequate explanation was offered for why [it] failed to obtain, or attempted to obtain, a sample of the accused device . . . so that its actual design and functioning could be compared with the claims of the patent"); Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992) (pre-filing investigation adequate where the patentee tested a sample, since "[w]ithout the aid of discovery, any further information was not practicably obtainable").

It is true that the Federal Circuit sometimes refers to Rule 11 violations in deciding whether there has been Section 285 exceptional conduct. See, e.g., Serio-US Indus. v. Plastic Recovery Tech., 459 F.3d 1311, 1322 (Fed. Cir. 2006); Brooks Furniture Mfg., 393 F.3d at 1381. Sometimes it says that rejection of a Rule 11 claim supports the rejection of a Section 285 claim. See, e.g., Hoffmann-La Roche Inc., 213 F.3d at 1365. But never has it said that finding a Rule 11 violation is alone determinative of a Section 285 violation. Instead, it has said: "Motions under Rule 11 and § 285 are *different*," Digeo, 505 F.3d at 1368 (emphasis added), and it has pointed to different burden-of-proof rules and different rules as to which circuit law governs, id. Most important, Rule 11's liability standard is different than Section 285's standard. Rule 11 requires "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), but the Federal Circuit has said that for Section 285, "merely negligent conduct does not suffice to establish that a case is exceptional," Digeo, 505 F.3d at 1369. Instead, Section 285 requires clear and convincing evidence of "studied ignorance." Eltech

8

Sys. Corp., 903 F.2d at 810. Moreover, to obtain fees for Rule 11 negligence, the party requesting fees must ordinarily give its opponent advance written notice that it will seek fees and an opportunity to withdraw the offending pleading. Fed. R. Civ. P. 11(c)(2). No such safe harbor is available for Section 285's more serious misconduct. See Digeo, 505 F.3d at 1368 n.9 (noting the safe harbor difference).

Here, the defendants have not shown clear and convincing evidence of studied ignorance on the part of Baychar when it filed the lawsuits. There had been prior litigation over this patent, including a claim construction; Baychar v. Frisby Tech., 230 F. Supp. 2d 75 (D. Me. 2002); some of it resulted in a settlement; Consent Judgment, Baychar v. Frisby Tech., No. 01-28-B-S (D. Me. Feb. 3, 2003) (Docket Item 63) (also Ex. 6 to Def.'s Statement of Material Fact in Support of Mot. for Summ. J. Based on Patent Exhaustion, No. 04-136-B-C (Docket Item 52-5)); some of it resulted in dismissal without prejudice. Order Dismissing Claims Without Prejudice as to Baychar & Outlast Tech., Baychar v. Frisby Tech., No. 01-28-B-S (D. Me. Apr. 17, 2003) (Docket Item 71).

Baychar's later pre-filing investigations for the current two lawsuits apparently consisted of conducting internet searches for words related to the '810 Patent and exploring the webpage results that implicated Salomon and the Burton Defendants. Baychar describes this as "rel[ying] on voluminous advertisements of [the defendants], examined in light of the previously construed patent claim." Pls.' Opp'n to Defs.' Mot for Att'ys' Fees, No. 04-144-B-C, at 5 (Docket Item 227); Pls.' Opp'n to Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 4 (Docket Item 176). Baychar did not buy and test the actual products that it claims infringed its

9

patent.[4] I am not happy with this level of investigation, and a Rule 11(c)(2) motion might have been appropriate, but I cannot conclude that Baychar thereby engaged in studied ignorance, certainly not by clear and convincing evidence. See Eltech Sys. Corp., 903 F.2d at 811; Mach. Corp. of Am., 774 F.2d at 473.

In sum, while it may be true that Baychar carelessly concluded that Salomon and the Burton Defendants infringed the '810 Patent by filing these two lawsuits after conducting this limited pre-filing internet investigation, that alone is insufficient to prove this case "exceptional" for purposes of Section 285. The defendants fail to submit clear and convincing evidence that Baychar, with studied ignorance, avoided the conclusion that the products for which it searched were unlikely to infringe the '810 Patent.

### E. *Persisting in Litigating*

Bad faith or vexatiousness "is determined at the time suit was filed and throughout the time it was maintained." Haynes Int'l, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1580 (Fed Cir. 1993). Thus the Federal Circuit has remarked that "[i]f the patentee prolongs litigation in bad faith, an exceptional finding may be warranted." Computer Docking Station Corp., 519 F.3d at 1379. I find by clear and convincing evidence that Baychar vexatiously, frivolously and in bad faith continued to pursue infringement claims against twenty products after Salomon established through uncontroverted evidence that they could not infringe the '810

---

[4] Baychar relies on Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295 (Fed. Cir. 2004), to argue that solely researching advertisements can be an appropriate pre-filing investigation. If this were a Rule 11 case, that argument would fail because in Q-Pharma, a Rule 11 case, the court emphasized repeatedly that reliance on advertisements may be adequate only if the patentee *also obtains a sample* to compare its patent claims with the accused products. Id. at 1302.

Patent. Although the Burton Defendants assert the same contention with respect to their accused products, I find that they fail to provide clear and convincing evidence to support their position.

Salomon provided Baychar with Salomon's president's sworn testimony that twenty of the twenty-two accused products did not contain phase change materials, Decl. of James Curleigh, No. 04-136-B-C (Apr. 5, 2005) (Ex. 12 to Decl. of James E. Hartley in Support of Salomon's Mot. for Att'ys' Fees) (Docket Item 126-14), an essential element of the '810 Patent, Frisby Tech., 230 F. Supp. 2d at 83-84. Baychar did not come up with any contrary evidence; instead, Baychar's expert did not even address the twenty non-infringing products in his opinion, stating only that the *other* two Salomon products were technically described in the '810 Patent. Decl. of G.A.M. (Tony) Butterworth, No. 04-136-B-C, at 5 (June 24, 2005) (Ex. 10 to Hartley Decl. in Support of Salomon's Mot. for Att'ys' Fees) (Docket Item 126-12). In its opposition to Salomon's motion for attorney fees, Baychar says that its expert's opinion "provided sufficient good-faith basis to continue the infringement claim *against the remaining Salomon products.*" Pls.' Opp'n to Def.'s Mot. for Att'ys' Fees, No. 04-136-B-C, at 6 (emphasis added). I find that when Baychar's own expert declined to state that the twenty products contained phase change materials that would infringe the '810 Patent, Baychar's claims against those products ceased to be colorable, and it was vexatious for Baychar not to withdraw the infringement claims then as to those products. Earlier, Baychar's conduct may have been careless and annoying, but then it crossed Section 285's line to vexatiousness.

Baychar argues that "even if the 20 accused products were withdrawn by Baychar, two accused products remained at issue, which would continue the case to resolution." Id. at 5. But this neglects the amount of time and resources needlessly spent by Salomon in opposing, and by this court in resolving, those twenty claims. By unnecessarily prolonging litigation on those twenty products, Baychar engaged in bad faith and vexatious tactics.

The Burton Defendants also provided Baychar with sworn testimony of corporate officers that none of their accused products satisfied every essential element of the '810 Patent. Decl. of Andrew Knittle, No. 04-144-B-C (Feb. 12, 2006) (Ex. 7 to Nordica USA Corp.'s Statement of Material Facts in Support of its Mot. for Summ. J. of Noninfringement) (Docket Item 90-8); Decl. of Eric Gaisser, No. 04-144-B-C (Apr. 6, 2005) (Ex. 12 to Decl. of James E. Hartley in Support of Defs.' Mot. for Att'ys' Fees) (Docket Item 223-17); Decl. of Patrick Devaney, No. 04-144-B-C (Mar. 11, 2005) (Ex. 12 to Hartley Decl. in Support of Defs.' Mot. for Att'ys' Fees) (Docket Item 223-17). In the Burton litigation, however, Baychar's expert listed several potentially infringing materials. Report of Pls.' Expert Witness, G.A.M. Butterworth, No. 04-144-B-C, at 5-6 (Apr. 1, 2005) (Ex. 10 to Hartley Decl. in Support of Defs.' Mot. for Att'ys' Fees) (Docket Item 223-15). While the Burton Defendants allege that Baychar's expert's report "contained nothing more than conclusory statements," Hartley Decl. in Support of Defs.' Mot. for Att'ys' Fees, 04-144-B-C, ¶ 23 (Docket Item 223), they do not contend that the expert failed to implicate several of their products as infringing the '810 Patent. Accordingly, I find that the Burton Defendants fail to show with clear and

convincing evidence that Baychar's continued litigation in their case was vexatious.

In sum, I find that the Burton Defendants have not proven by clear and convincing evidence that Baychar engaged in bad-faith litigation. I find that Salomon has proven bad faith litigation by clear and convincing evidence, but only as to continued litigation over twenty products after Baychar's expert failed to identify infringing material in the twenty. Accordingly, the Burton case is not "exceptional" under Section 285, but the Salomon case is. I turn to the second part of the inquiry: whether discretionarily to award fees in Salomon.

## II. *Appropriateness of Award in Salomon*

Once a case is found to be "exceptional," a court "must then determine whether an award of attorney fees is appropriate." Forest Labs., Inc., 339 F.3d at 1328. Merely concluding that circumstances are "exceptional" does not mandate an award of fees. Innovation Tech., Inc. v. SplashA Med. Devices, LLC, 528 F.3d 1348, 1350 (Fed. Cir. 2008); accord Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (noting two-step analysis); Molins PLC v. Textron, Inc., 48 F.3d 1172 (Fed. Cir. 1995) (same). Rather, "[i]t is at this point that the trial court exercises its discretion in making, or not making, an award." Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985), *overruled on other grounds by* Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 (Fed. Cir. 1988). In considering the appropriateness of an award, a court may consider the "closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors

13

contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation." Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 414 (Fed. Cir. 1993). Section 285 relief "is limited to circumstances in which it is necessary to prevent 'a gross injustice.'" Forest Labs., Inc., 339 F.3d at 1329. "An award of attorney fees is within the discretion of the district judge." Mach. Corp. of Am., 774 F.2d at 471.

These cases were not close, and I am critical of the level of investigation that Baychar conducted before filing these two lawsuits, but I do not award fees on that basis for the reasons I have stated. Instead, when on top of its flimsy pre-filing investigation, Baychar pursued litigation against twenty of twenty-two Salomon products even after its expert failed to substantiate its claims, its behavior became vexatious and in bad faith. That culminating behavior merits an award of fees under the discretionary power. But the fees shall be apportioned so as not to include those incurred by Salomon in defending the two colorable claims or in defending the twenty products prior to issuance of Baychar's expert's report. In my judgment, that is a proper exercise of the court's discretion.

## CONCLUSION

The Burton Defendants' motion for attorney fees is **DENIED**, and Salomon's motion is **GRANTED IN PART**. Pursuant to Federal Rules of Civil Procedure 54(d)(2)(D) and 72(b), I refer the determination of the amount of attorney fees to the Magistrate Judge for a recommended decision consistent with this opinion.

**SO ORDERED.**

**DATED THIS 4TH DAY OF NOVEMBER, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

15